**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KELLER TANK SERVICES II, INC.,

     Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent - Appellee.

No. 16-9001

_____

**ORDER**
_____

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

     This matter is before us on *Appellee's Motion to Amend Opinion to Clarify Authority of IRS Office of Appeals over Rescission of I.R.C. § 6707A Penalties.* Upon careful consideration, the motion is granted. The court's February 21, 2017 opinion is withdrawn and replaced by the attached revised opinion.

                    Entered for the Court,

                    ELISABETH A. SHUMAKER, Clerk

                    by: Chris Wolpert
                       Chief Deputy Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KELLER TANK SERVICES II, INC.,

    Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 16-9001

_____

**APPEAL FROM THE COMMISSIONER OF INTERNAL REVENUE**
**(CIR No. 11611-14 L)**
_____

A. Lavar Taylor, A. Lavar Taylor Law Offices, Santa Ana, California (Jonathan T. Amitrano, A. Lavar Taylor Law Offices, Santa Ana, California; Allen J. White, Allen J. White & Associates, Downers Grove, Illinois; and William Wise, Wise & Stracks, Chicago, Illinois, with him on the briefs), appearing for Appellant.

Jennifer M. Rubin, Attorney, Tax Division (Caroline D. Ciraolo, Principal Deputy Assistant Attorney General; Diana L. Erbsen, Deputy Assistant Attorney General; Gilbert S. Rothenberg, Attorney, Tax Division; and Michael J. Haungs, Attorney, Tax Division, with her on the brief), United States Department of Justice, Washington, DC, appearing for Appellee.

_____

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

In this appeal, we address whether a taxpayer may challenge a tax penalty in a Collection Due Process hearing ("CDP hearing") after already having challenged the penalty in the Appeals Office of the Internal Revenue Service ("IRS").

Keller Tank Services II, Inc. ("Keller"), the taxpayer, participated in an employee benefit plan and took deductions for its contributions to the plan. The IRS notified Keller of (1) a tax penalty of $57,782 for failure to report its participation in the plan as a "listed transaction" on its 2007 tax return, and (2) an income tax deficiency and related penalties for improper deductions of payments to the plan. This case is about the $57,782 penalty and Keller's efforts to challenge it.

As more fully described below, Keller protested the tax penalty at the IRS Appeals Office. It then attempted to do so in a CDP hearing but was rebuffed because it already had challenged the penalty at the Appeals Office. Keller appealed the CDP decision to the Tax Court, which granted summary judgment to the Commissioner of Internal Revenue ("Commissioner"). Keller appeals that decision here. Exercising jurisdiction under 26 U.S.C. § 7482(a)(1), we affirm.

## I.  BACKGROUND

To aid the reader, we provide definitions of various terms, set forth the pertinent statutes and regulation, and offer a brief overview of the relevant tax enforcement process and administrative structure. We then turn to the factual and procedural history of this case.

## A. *Terms, Statutes, and Regulation*

### 1. **Key Terms**

The following terms are used throughout the opinion and first appear in the order presented here.[1]

- Commissioner:  the Commissioner of Internal Revenue is nominated by the President and confirmed by the Senate, and has the duty to administer, manage, conduct, direct, and supervise the execution and application of internal revenue laws.  Lawsuits by and against the IRS are conducted in the name of the Commissioner, and are litigated by counsel of the IRS.

- Liability:  amount owed by a taxpayer under the tax laws.  As used in this opinion, a liability may be a penalty or deficiency.

- Deficiency:  the amount by which the tax value imposed by the IRS exceeds the amount reported by the taxpayer on its return.  The IRS's determination of a deficiency is a provisional determination.  Accordingly, a notice of deficiency affords the taxpayer a right to prepayment judicial review by the Tax Court before the IRS assesses and collects the liability.  The IRS cannot attempt to collect the deficiency until the notice of deficiency has been mailed to the taxpayer and the taxpayer has been given 90 days to file a petition in the Tax Court.  26 U.S.C. § 6213.

- Penalty:  imposed on taxpayers by the IRS to encourage compliance with tax laws.  Certain penalties are considered assessable, which means the IRS may assess them without providing an opportunity for prepayment judicial review by the Tax Court.  The penalty provision relevant to this case is § 6707A, which imposes a penalty for failing to report transactions classified as "reportable," including "listed" transactions.  26 U.S.C. § 6707A(b)(2).  A § 6707A penalty may be imposed for failure to report regardless of whether a deficiency results.  Internal Revenue Manual 4.32.4.1.1 ¶ 3.

- Reportable Transaction: a transaction that must be disclosed on a taxpayer's return because the Secretary of Treasury ("Secretary") has determined that type of transaction has potential for tax avoidance or evasion.  The maximum penalty for failure to report a reportable transaction, other than a listed transaction, is $50,000 for a corporation.  26 U.S.C. § 6707A(b)-(c).

---

[1] Unless otherwise specified, all definitions are from Michael I. Saltzman and Leslie Book, IRS Prac. & Proc. (2016).

- Listed Transaction: a type of reportable transaction that is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction. The Secretary identifies listed transactions in notices or other published guidance. The maximum penalty for failing to report a listed transaction is $200,000 for a corporation. 26 U.S.C. § 6707A(b)-(c).

- Assessment: the formal recording and establishment of a taxpayer's liability, fixing the amount owed by the taxpayer. The assessment is effectively a judgment and triggers the IRS's ability to collect on the liability via lien or levy.

- Levy: after a liability has been assessed, certain procedural requirements have been met, and the taxpayer has neglected or refused to pay the assessed tax, the IRS may attach, or encumber, the taxpayer's property to seize and sell it as "a prompt and convenient method for satisfying delinquent tax claims." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 736 (1985) (quotations omitted). This process is called a "levy."

- Rescission Request: the taxpayer may request the Commissioner to rescind all or part of a penalty imposed under § 6707A for a non-listed reportable transaction if doing so would promote compliance with the tax laws and effective tax administration. The Commissioner, however, may not rescind a penalty for a listed transaction. No judicial review is available for the decision to grant or deny rescission. 26 U.S.C. § 6707A(d)(2).

- IRS Appeals Office: the administrative dispute resolution body of the IRS that resolves tax controversies without litigation. The 1998 IRS Restructuring and Reform Act emphasized that the Appeals Office must be an independent bureau of the IRS and be impartial to the government and taxpayer. *See Robert v. United States,* 364 F.3d 988, 990 (8th Cir. 2004).

- Collection Due Process ("CDP") Hearing: the procedure created by the 1998 IRS Restructuring and Reform Act to control overreaching in the IRS's collection activities. When the IRS decides to collect a liability through a lien or levy, taxpayers first receive an opportunity to contest the collection through an administrative CDP hearing before a CDP hearing officer (an independent employee of the Appeals Office). The CDP hearing officer must have had no prior involvement with the taxpayer. Section 6330 outlines the CDP hearing procedures required before a levy may be made. 26 U.S.C. § 6330.

- **Tax Court:** a specialized court established by Congress under Article I of the Constitution to conduct prepayment judicial review of deficiencies. The Tax Court also may review certain other administrative determinations by the IRS. *See, e.g.*, 26 U.S.C. § 6330.

- **Refund suit:** a lawsuit brought by a taxpayer seeking a refund of a paid liability alleged to be unlawfully collected. To challenge the IRS's assessment in a refund suit, the taxpayer must first pay the full amount of the tax liability and file a claim for refund with the IRS. If the IRS issues an adverse decision, the taxpayer may then institute a tax refund suit in either a federal district court or the U.S. Court of Federal Claims.

2. **Key Statutes and Regulation**

The following statutes and regulation are the primary legal materials applicable to this appeal.

   a. *26 U.S.C. § 6707A: Penalty for failure to include reportable transaction information with return*

(a) Imposition of penalty
Any person who fails to include on any return or statement any information with respect to a reportable transaction which is required under section 6011 to be included with such return or statement shall pay a penalty in the amount determined under subsection (b).

(b) Amount of penalty
     (1) In general
     Except as otherwise provided in this subsection, the amount of the penalty under subsection (a) with respect to any reportable transaction shall be 75 percent of the decrease in tax shown on the return as a result of such transaction (or which would have resulted from such transaction if such transaction were respected for Federal tax purposes).
     (2) Maximum penalty
     The amount of the penalty under subsection (a) with respect to any reportable transaction shall not exceed—
          (A) in the case of a listed transaction, $200,000 ($100,000 in the case of a natural person), or
          (B) in the case of any other reportable transaction, $50,000 ($10,000 in the case of a natural person).
     (3) Minimum penalty
     The amount of the penalty under subsection (a) with respect to any

transaction shall not be less than $10,000 ($5,000 in the case of a natural person).

(c) Definitions
For purposes of this section:
    (1) Reportable transaction
    The term "reportable transaction" means any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion.
    (2) Listed transaction
    The term "listed transaction" means a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011.

(d) Authority to rescind penalty
    (1) In general
    The Commissioner of Internal Revenue may rescind all or any portion of any penalty imposed by this section with respect to any violation if—
        (A) the violation is with respect to a reportable transaction other than a listed transaction, and
        (B) rescinding the penalty would promote compliance with the requirements of this title and effective tax administration.
    (2) No judicial appeal
    Notwithstanding any other provision of law, any determination under this subsection may not be reviewed in any judicial proceeding.

b. *26 U.S.C. § 6330: Notice and opportunity for [a CDP] hearing before levy*

- 26 U.S.C. § 6330(c)(2)(B) ("¶ (c)(2)(B)"):
  (c) Matters considered at hearing
  In the case of any hearing conducted under this section—
             \* \* \* \*
      (2) Issues at hearing

          (A) In general
          The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including—
              (i) appropriate spousal defenses;
              (ii) challenges to the appropriateness of collection actions; and

(iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

(B) Underlying liability
The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

- 26 U.S.C. § 6330(c)(4)(A) ("¶ (c)(4)(A)"):
  (c) Matters considered at hearing
  In the case of any hearing conducted under this section—
  * * * *
  (4) Certain issues precluded
  An issue may not be raised at the hearing if—

  (A)(i) the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding; and
  (ii) the person seeking to raise the issue participated meaningfully in such hearing or proceeding; or

  (B) the issue meets the requirement of clause (i) or (ii) of section 6702(b)(2)(A).

- 26 U.S.C. § 6330(d):
  (d) Proceeding after hearing

  (1) Petition for review by Tax Court
  The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter).
  * * * *
  (3) Jurisdiction retained at IRS Office of Appeals
  The Internal Revenue Service Office of Appeals shall retain jurisdiction with respect to any determination made under this section, including subsequent hearings requested by the person who requested the original hearing on issues regarding—
      (A) collection actions taken or proposed with respect to such determination; and

(B) after the person has exhausted all administrative remedies, a change in circumstances with respect to such person which affects such determination.

c. *26 C.F.R. § 301.6320-1("Treas. Reg. § 301.6320-1"): Notice and opportunity for [a CDP] hearing upon filing of notice of Federal tax lien*

- <u>Treas. Reg. § 301.6320-1(e)(3)</u>:
  (e) Matters considered at CDP hearing—(1) In general. . . . Appeals has the authority to determine the validity, sufficiency, and timeliness of any CDP Notice given by the IRS and of any request for a CDP hearing that is made by a taxpayer. . . . The taxpayer may raise any relevant issue relating to the unpaid tax at the hearing, including appropriate spousal defenses, challenges to the appropriateness of the [proposed levy], and offers of collection alternatives. The taxpayer also may raise challenges to the existence or amount of the underlying liability, including a liability reported on a self-filed return, for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute the tax liability. Finally, the taxpayer may not raise an issue that was raised and considered at a previous CDP hearing under section 6330 or in any other previous administrative or judicial proceeding if the taxpayer participated meaningfully in such hearing or proceeding. Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.

  * * * *

  <u>(3) Questions and answers</u>.

  * * * *

  Q–E2. When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?

  A–E2. A taxpayer is entitled to challenge the existence or amount of the underlying liability for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the notice of deficiency. An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered

- 8 -

either before or after the assessment of the liability. An opportunity for a conference with Appeals prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose.

## B. *Legal and Administrative Background*

The Internal Revenue Code ("Code" or "IRC") requires taxpayers to file returns in the manner prescribed by the IRS. 26 U.S.C. § 6011(a). The Code directs the Secretary—acting through the IRS—to determine, assess, and collect federal taxes. *See id.* §§ 6201(a), 6301. Under this authority, the Secretary has established a procedure for the IRS to assess and collect penalties and deficiencies, and methods for the taxpayer to dispute these liabilities.

## 1. **Section 6707A Penalty and Administrative Procedure**

Section 6707A of the Code, titled "Penalty for Failure to Include Reportable Transaction Information with Return," authorizes the imposition of a penalty on taxpayers who fail to disclose information on their tax returns regarding "reportable" transactions, including "listed" transactions. *Id.* § 6707A.

Penalties under § 6707A are not subject to the procedures the IRS has afforded for deficiencies because they do not depend upon a deficiency; they are imposed solely for the failure to disclose, even in cases involving an overpayment of tax. *Smith v. Comm'r*, 133 T.C. 424, 428-29 (2009). Because § 6707A penalties are not subject to deficiency procedures, the taxpayer may not directly appeal a penalty to the Tax Court. *See Bartman v. Comm'r*, 446 F.3d 785, 787 (8th Cir. 2006) (stating "[a] notice of deficiency issued by the IRS pursuant to § 6212 is the taxpayer's jurisdictional 'ticket to the Tax

Court.'" (citations omitted)); *Spector v. Comm'r*, 790 F.2d 51, 52 (8th Cir. 1986) (citing *Laing v. United States*, 423 U.S. 161, 165 n.4 (1976)) (stating "the determination of a deficiency and the issuance of a notice of deficiency is an absolute precondition to tax court jurisdiction").

Thus, contesting a § 6707A penalty takes a different course. Once an IRS examiner proposes and receives approval from the IRS Territory Manager to impose a penalty for failing to report a reportable transaction, the examiner issues a "30-day Letter" before formally assessing the penalty. Internal Revenue Manual at 4.32.4.4. The taxpayer has 30 days to agree to or protest the penalty to the Appeals Office after receiving the "30-day Letter." *Id.* In response to the taxpayer's protest, the IRS offers the taxpayer a pre-assessment review of the proposed § 6707A penalty by an IRS Appeals Officer "[i]f possible." *See id.* at 4.32.4.6. If a pre-assessment review is not possible, the taxpayer is offered a post-assessment review. *Id.* The Appeals Officer may decide to abate or approve collection of the penalty. *Id.* at 4.32.4.8, 4.32.4.9.

2. **Collection Due Process ("CDP") Hearings**

Once the IRS decides to levy to collect a penalty, it must notify the taxpayer in writing of the right to a hearing under § 6330(a)(1), called a CDP hearing. Congress created the CDP process as part of the 1998 IRS Restructuring and Reform Act, a "Taxpayer Bill of Rights" aimed to curb abuse of taxpayers. *See Dalton v. Comm'r*, 682 F.3d 149, 154 (1st Cir. 2012); *Tucker v. Comm'r*, 676 F.3d 1129, 1131 (D.C. Cir. 2012).

a. *The 1998 IRS Restructuring and Reform Act and the CDP Process*

- 10 -

Before 1998, the IRS could reach a taxpayer's assets by lien or levy without providing the taxpayer any process before the amount owed by the taxpayer was assessed and collected. *Dalton*, 682 F.3d at 154. Congress created the CDP process to afford taxpayers a pre-deprivation opportunity to contest the lien or levy before the IRS proceeded with collection. *Id.* at 154-55. At the CDP hearing, the taxpayer may challenge the propriety of a pending lien or levy, verify that collection is appropriate, and offer alternatives to collection. *Tucker*, 676 F.3d at 1131.

CDP hearings take place in the Appeals Office. *Id.*; *Gyorgy v. Comm'r*, 779 F.3d 466, 472 (7th Cir. 2015). The Appeals Officer presiding over the hearing represents the IRS and must have had no prior involvement with the liability at issue. *Tucker*, 676 F.3d at 1131. CDP proceedings "are informal and may be conducted via correspondence, over the phone or face to face." *Living Care Alts. of Utica, Inc. v. United States*, 411 F.3d 621, 624 (6th Cir. 2005). No transcript, recording, or other direct documentation of the proceeding is required. *Id.*

At the hearing, the Appeals Officer must do three things:

1) conduct a verification that the IRS has met all legal requirements and fulfilled its procedural obligations to move forward with the lien or levy, 2) consider defenses and collection alternatives proffered by the taxpayer and [] 3) make a determination that the "proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."

*Id.* at 624-25 (emphasis omitted) (quoting 26 U.S.C. § 6330(c)(3)).

b. *Matters Raised at the CDP Hearing*

The 1998 IRS Restructuring and Reform Act lists the issues the taxpayer may raise at the CDP hearing. The taxpayer may challenge its underlying tax "liability" only if it "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C. § 6330(c)(2)(B) ("¶ (c)(2)(B)"). Notably, the taxpayer need only have received an opportunity to dispute its tax liability. Whether it took advantage of that opportunity is irrelevant. Thus, a taxpayer is precluded from challenging liability at a CDP hearing when the taxpayer was afforded, but failed to take advantage of, a prior opportunity to dispute the liability. *See, e.g.*, *Chandler v. Comm'r*, 327 F. App'x 763, 766 (10th Cir. 2009) (unpublished),[2] *Abu-Awad v. United States*, 294 F. Supp. 2d 879, 887-88 (S.D. Tex. 2003), *Pelliccio v. United States*, 253 F. Supp. 2d 258, 261-62 (D. Conn. 2003).

The taxpayer may raise any other relevant "issue" relating to the unpaid tax—including, but not limited to, challenges to the appropriateness of collection actions, and alternative collection options—so long as the issue was not raised and considered in a prior administrative or judicial proceeding where the taxpayer meaningfully participated. 26 U.S.C. § 6330(c)(4)(A) ("¶ (c)(4)(A)").

c. *Appealing the CDP Hearing's Findings and Conclusions*

After the CDP hearing, the Appeals Office decides whether it is reasonable to proceed with the intended collection action and issues a notice of determination

---

[2] Although not precedential, we find the reasoning of the unpublished cases cited in this opinion instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

containing its findings and conclusions. *Dalton*, 682 F.3d at 155; *Gyorgy*, 779 F.3d at 472 (citing Treas. Reg. § 301.6330–1(e), Q & A–E8).

A taxpayer who is dissatisfied with the findings or conclusions of the CDP hearing can appeal the determination to the Tax Court. *Gyorgy*, 779 F.3d at 472 (citing 26 U.S.C. § 6330(d)(1)). The Tax Court may review a § 6707A penalty when it is appealed from a CDP proceeding under § 6330(d). *Yari v. Comm'r*, 143 T.C. 157, 162 (2014).

When the Tax Court receives an appeal from the CDP hearing, however, its review is limited to issues that were properly raised during the CDP hearing. *See Goza v. Comm'r*, 114 T.C. 176, 182-83 (2000); *Perkins v. Comm'r*, 129 T.C. 58, 67 (2007); *Konkel v. Comm'r*, 2000 WL 1819417, at *3 (M.D. Fla. Nov. 6, 2000); *see also* Treas. Reg. § 301.6330–1(f), Q & A–F3. Because liability challenges precluded by ¶ (c)(2)(B) and issues precluded by ¶ (c)(4)(A) cannot be heard at a CDP hearing, the taxpayer may not present them to the Tax Court on appeal from the CDP hearing. *See Goza*, 114 T.C. at 182-83. If the taxpayer still wishes to contest those issues, it must instead pay the asserted liability and file a refund suit in federal district court. *See Gorospe v. Comm'r*, 451 F.3d 966, 968 (9th Cir. 2006).

### 3. **Tax Court**

Congress established the Tax Court, an Article I court within the Executive Branch, *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 991 (2d Cir. 1991), to give taxpayers a method to challenge IRS liability assessments without first having to pay an alleged liability. Without this forum, the taxpayer's only alternative would be to pay the

asserted liability and initiate a refund suit in federal district court. *Bartman*, 446 F.3d at 787.

The Tax Court's jurisdiction is limited and is generally conferred by § 7442, but other specific grants are interspersed throughout the Code. Internal Revenue Manual 35.1.1.1. Specifically, § 6213(a) confers jurisdiction on the Tax Court to redetermine deficiencies and § 6330(d) confers jurisdiction to review penalties challenged at a CDP hearing. As noted above, the Tax Court may only review issues that were properly before the CDP proceeding.

Because CDP hearings typically produce a "scant record," the Tax Court generally conducts a deferential review of CDP determinations. *See Olsen v. United States,* 414 F.3d 144, 150 (1st Cir. 2005). If the underlying tax liability was properly at issue in the CDP hearing, the Tax Court reviews that issue de novo. *Tucker v. Comm'r*, 135 T.C. 114, 139 (2010). But the Tax Court reviews all other CDP determinations for an abuse of discretion. *Id.*

The Tax Court's decision is subject to review in the appropriate circuit court of appeals. *See* 26 U.S.C. § 7482(a)(1).

C. *Factual and Procedural History*

Keller participated in an employee benefit plan called the Sterling Benefit Plan ("Plan"), but did not report its participation on its tax return. The IRS alleges Keller's failure to report violated § 6707A. The IRS also claims Keller took improper deductions on its income tax returns related to its participation in the Plan, resulting in a deficiency. As a result, Keller has faced two parallel proceedings in which the IRS has sought: (1) a

- 14 -

penalty under § 6707A for Keller's failure to report its participation in the Plan,[3] which

the IRS considers a listed transaction ("penalty proceeding"); and (2) the income tax

deficiency from and resulting penalty for Keller's alleged improper deduction of

payments to the Plan ("deficiency proceeding").[4]  This case concerns the first penalty

proceeding and Keller's efforts to challenge its liability for the § 6707A penalty.  We

outline the relevant factual and procedural history below.

1. **Section 6707A Penalty and Appeals Office Administrative Proceedings**

The Commissioner proposed a $57,781.50 penalty against Keller under

§ 6707A for the 2007 tax year for Keller's failure to disclose its participation in a

listed transaction.  Keller filed a protest with the Appeals Office to seek rescission of

the penalty under § 6707A(d).  On June 20, 2013, the Appeals Officer, Ms. Espinoza,

held a telephone conference with Keller.  Keller sent no materials beyond its protest

to Ms. Espinoza for consideration before the conference but faxed three forms during

the conference.  At the conference, Ms. Espinoza heard Keller's liability arguments,

concluded Keller's participation in the Plan was a "listed transaction," and decided

the penalty should be sustained.  She sent a fax to Keller stating, "If taxpayer

---

[3] As noted above, § 6707A penalties do not depend on an underlying deficiency.

[4] The asserted penalties fall under § 6662(a) ("Imposition of Accuracy-Related Penalty on Underpayments") and § 6662A ("Imposition of Accuracy-Related Penalty on Understatements with Respect to Reportable Transactions").  When determining penalties for deficiencies stemming from reportable transactions, including listed transactions, under § 6662A, the terms "reportable transaction" and "listed transaction" have the respective meanings given to such terms by § 6707A(c).  26 U.S.C. § 6662A(d).

- 15 -

disagrees with the penalty and/or Appeals doesn't hear from [Keller] by 7/9/2013, Appeals will process the case for closure." J. App. at 35. Because the Appeals Office did not hear from Keller by July 9, 2013, it sustained the penalty and closed the case.

2. **CDP Hearing**

The IRS sent Keller a final notice of its intent to levy and of Keller's right to a CDP hearing under § 6330. The letter stated that Keller must pay the assessed penalty, make payment arrangements, or appeal the levy by requesting a CDP hearing. Keller requested a CDP hearing, arguing the penalty was assessed "without the opportunity to protest the determination of the underlying transaction . . . [to be] a listed transaction." J. App. at 45. Keller did not seek any collection alternatives or propose payment arrangements.

A CDP Officer, Elizabeth DeAngelis, granted Keller's request for a hearing and sent a letter scheduling a telephone conference. Ms. DeAngelis explained that the call would provide an opportunity to discuss the reasons Keller disagreed with the collection action or alternatives to the collection action. She explained that she must consider any legitimate issues Keller wished to discuss. But, tracking the language of ¶ (c)(2)(B), the letter stated: "You are not able to dispute the [underlying tax] liability in your CDP hearing because: Our records show you had a prior opportunity to dispute the penalty when you had a 6707A Appeals hearing for this tax period." J. App. at 47. The letter also outlined how Keller could raise the issue of alternative collection methods at the CDP hearing and said that if Keller did not agree with the

- 16 -

CDP's determination, "[it] may appeal the case to the United States Tax Court." J. App. at 47.

Keller participated in a phone conference with Ms. DeAngelis on March 18, 2014. Keller attempted to contest its tax liability, but Ms. DeAngelis informed Keller's counsel that Keller was precluded from challenging its liability because Ms. Espinoza had reviewed and sustained liability at the Appeals Office hearing. Keller raised no other issues during the hearing. Ms. DeAngelis sustained the penalty. The IRS sent Keller a Notice of Determination, which specified that Keller's only arguments at the CDP hearing attempted to dispute its liability for the penalty, "however, you are unable to raise the liability within this hearing since you had a prior opportunity to dispute the liability when you had the IRC 6707A Appeals hearing for this same tax period. You raised no other issues." J. App. at 52-53, 55.

3. **Tax Court**

Keller filed a petition with the Tax Court to challenge its liability for the penalty.[5] The Commissioner filed a motion for summary judgment, arguing that Keller was precluded from contesting its liability for the penalty in its CDP hearing under ¶ (c)(2)(B) because of its previous opportunity to challenge liability at the Appeals Office hearing. After the Tax Court allowed the parties to supplement their

---

[5] In its petition to the Tax Court, Keller also argued that § 6707(d)(2), which precludes judicial review of the Commissioner's determination to rescind a penalty, is unconstitutional as a deprivation of due process. Keller raised this argument again in its Objection to the Commissioner's Motion for Summary Judgment. The Tax Court noted the argument in its decision, but did not address its merits. Keller has not raised this argument on appeal.

filings, the Commissioner amended its motion for summary judgment to challenge Keller's ability to challenge its liability under both ¶ (c)(2)(B) and ¶ (c)(4)(A).

The Tax Court granted summary judgment to the Commissioner on June 16, 2015. It determined that ¶ (c)(2)(B) precluded Keller from challenging its underlying liability because Keller was afforded a prior opportunity to dispute its liability in its hearing before the Appeals Office.[6] The Tax Court further held that Treas. Reg. § 301.6320-1(e)(3) is a reasonable interpretation of ¶ (c)(2)(B) and applies to Keller based on *Lewis v. Commissioner*, 128 T.C. 48 (2007). Because Keller did not raise any non-liability challenges, the Tax Court sustained the levy.[7] Keller filed two motions for reconsideration, which the Tax Court denied.

Keller timely appealed the Tax Court's June 16, 2015 order to this court.

---

[6] As noted above, ¶ (c)(2)(B) precludes liability challenges at the CDP hearing when the taxpayer had a prior *opportunity* to dispute liability. *See supra*, note 4. Although the taxpayer need not have taken advantage of that opportunity to be precluded from re-litigating its liability before the CDP hearing, we note, as the Tax Court did, that Keller availed itself of that opportunity and contested its penalty liability before Ms. Espinoza.

[7] The Tax Court also distinguished Keller's case from *Yari v. Comm'r of Internal Revenue*, 143 T.C. 157 (2014). In *Yari*, the taxpayer's previous Appeals Office consideration of its liability was not considered a "prior opportunity" to challenge its liability under ¶ (c)(2)(B) because an amendment to § 6707A, which established the proper method for computing penalties, intervened after the administrative hearing and before the Tax Court hearing. Without any intervening change to the statute giving rise to Keller's liability in this case, the Tax Court held the Appeals Office had considered Keller's liability before the CDP hearing, and Keller therefore had a prior opportunity to challenge the existence or the amount of the underlying liability, as required by ¶ (c)(2)(B).

- 18 -

## II. DISCUSSION

The Commissioner argues that Keller's appeal is moot because Keller is collaterally estopped from challenging its liability. Keller argues that Treas. Reg. § 301.6320-1(e)(3) unreasonably interprets ¶ (c)(2)(B) to preclude liability challenges at the CDP hearing—and ultimately before the Tax Court—when the taxpayer had a prior opportunity to dispute its liability before the Appeals Office. We disagree with the Commissioner's mootness arguments and with Keller's arguments regarding the scope of the CDP hearing and affirm the Tax Court's grant of summary judgment.

### A. *Mootness and Collateral Estoppel*

The Commissioner's mootness argument, as more fully explained below, stems from Keller's stipulation to be bound in its deficiency proceeding by the Tax Court's decision in a related case called *Our Country Home Enterprises Inc., et al. v. Commissioner*, 145 T.C. 1 (2015). In *Our Country Home*, the Tax Court addressed another taxpayer's participation in the same Sterling Benefit Plan and determined that participation in the Plan was a listed transaction. Based on Keller's stipulation, the Commissioner contends that the Tax Court's decision in *Our Country Home* that participation in the Plan was a listed transaction resolved all of Keller's issues in this appeal and that Keller is thereby collaterally estopped from challenging its liability, mooting this case. We disagree for three reasons: (1) The Commissioner's collateral estoppel argument concerns the merits of Keller's arguments, not our jurisdiction; (2) Keller's stipulation is binding only in Keller's deficiency proceeding, not the

- 19 -

§ 6707A penalty proceeding at issue in this appeal; and (3) even if Keller's participation in the Plan is a listed transaction, Keller contests other issues related to this appeal.

1. **Additional Procedural Background**

In the second parallel proceeding mentioned above—the deficiency proceeding—the Commissioner issued a notice of deficiency to Keller for its alleged improper deductions based on payments to the Plan between 2006-2008 and assessed penalties for that deficiency under § 6662(a) and § 6662A. Keller stipulated with the IRS that its liability for any deficiency based on improper income deductions for the tax years 2006, 2007, and 2008 would be resolved "on the same basis that similar issues are resolved by the final decision . . . of *Our Country Home*." Supp. App. at 16.

On July 13, 2015, the Tax Court published its decision in *Our Country Home*, concluding that participation in the Plan was a listed transaction, any deductions taken for payments to the Plan resulted in a deficiency, and this deficiency was subject to a penalty under § 6662A. The Tax Court entered its final order on February 8, 2016.

2. **Additional Legal Background**

a. *Mootness*

The "[c]onstitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (citations and quotations omitted); *see Lewis*

*v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). This court lacks subject matter jurisdiction if a case is moot. *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). The parties must continue to have a "personal stake in the outcome" of the lawsuit at all stages of the litigation so the question decided affects the rights of the litigants in the case before the court. *Id*. (citations and quotations omitted). The question is whether granting relief for the issues before the court "will have some effect in the real world." *Id.* at 1165-66 (citations and quotations omitted).

A case may become moot while pending, including on appeal. *United States v. De Vaughn,* 694 F.3d 1141, 1157 (10th Cir. 2012) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed . . . . If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Brown*, 822 F.3d at 1165 (citations and quotations omitted). "'Put another way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision.'" *Id.* at 1166 (quoting *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015)). When a case is on appeal,

> [I]t is proper for a party to provide additional facts when that party has an objectively reasonable, good faith argument that subsequent events have rendered the controversy moot. Indeed, we depend on the parties for such information, and it is axiomatic that subsequent events will not be reflected in the [lower] court record.

*See Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1309 (10th Cir. 2000), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

We review mootness de novo as a legal question. *Brown*, 822 F.3d at 1168.

b. *Collateral Estoppel*

Collateral estoppel, or issue preclusion, concerns the merits of a case. It is an affirmative defense that bars the re-litigation of an issue of law or fact after it is determined by a valid, final judgment. *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014).

The party invoking collateral estoppel must prove four elements: (1) the issue previously decided is identical to the present one; (2) the prior action was finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the previous adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the previous adjudication. *Id.* Regarding the third element, the Supreme Court generally holds that collateral estoppel does not apply to nonparties in the prior action. *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008). But "the [general] rule against nonparty preclusion is subject to exceptions," including that "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the [agreement's] terms." *Id.* (quoting 1 Restatement (Second) of Judgments § 40, p. 390 (1980)). The litigated issue must also be "essential to the judgment." *Stan Lee Media*, 774 F.3d at 1297 (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)).

- 22 -

3. **Analysis**

This case is not moot for three reasons.

First, the Commissioner's attempt to base mootness on collateral estoppel is misplaced. Unlike mootness, an Article III jurisdictional bar, collateral estoppel is an affirmative defense. *See United States v. Simons,* 86 F. App'x 377, 380 (10th Cir. Jan. 22, 2004) (unpublished) (citing *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002)) ("the[] invocation of . . . collateral estoppel to support [a] position on the merits does not introduce any jurisdictional element into the case; these are mere affirmative defenses.")); *see also* Fed. R. Civ. P. 8(c) (listing res judicata and estoppel as affirmative defenses). When a collateral estoppel defense defeats a claim, it does so on the merits, not by displacing jurisdiction. The Sixth Circuit's explanation of the interaction between the doctrines of mootness and collateral estoppel is instructive:

> [T]he possibility that a party is collaterally estopped from pursuing a cause of action does not entail that that cause of action is moot. . . . The doctrine of mootness . . . in no way depends on the merits of the plaintiff's contention . . . . Stated differently, the court assumes that the plaintiff will receive the relief that he requests in this litigation, and then proceeds to determine whether there is a substantial likelihood that that relief will redress his asserted injury.

*Smith v. SEC*, 129 F.3d 356, 363-64 (6th Cir. 1997) (quotations omitted). The Commissioner cites no authority to the contrary.

Second, Keller's stipulation was limited to its deficiency proceeding and did not cover its § 6707A penalty proceeding, which is the only proceeding pertinent to this appeal. Applying collateral estoppel to a nonparty on the basis of its agreement to be bound by an action between others is limited to "the [agreement's] terms," *Taylor*, 553

- 23 -

U.S. at 893. The terms of Keller's stipulation in the deficiency proceeding do not extend to its liability in the penalty proceeding.

Third, even if the decision in *Our Country Home* were to collaterally estop Keller from challenging that its participation in the Plan constituted a listed transaction, other issues remain that the outcome of this appeal could affect. The Commissioner argues that if Keller's participation in the Plan is a listed transaction, this appeal is moot because Keller would be "collaterally estopped from challenging its liability for the reporting penalty on remand." Aplee. Br. at 25.[8] But Keller's appeal contests the scope of the CDP hearing, not the merits of its liability challenge. And the Commissioner's argument overlooks that Keller seeks to contest at the CDP hearing not only whether a penalty should be imposed but also its proper calculation under § 6707A. Aplt. Br. at 8 ("Among the issues considered by the Appeals Officer in this initial administrative appeal was whether the IRS erred in computing the amount of the penalty for the year 2007 . . . . Keller contended (and still contends) that any penalty assessed under § 6707A for the 2007 tax year should be [calculated differently.]"). The *Our Country Homes* stipulation does not reach the calculation issue.

_____

[8] We question whether this appeal is the proper forum for the Commissioner to raise a collateral estoppel argument. At the CDP, Keller would challenge whether it should be subject to a penalty under § 6707A and how any such penalty should be calculated. These issues are not before us on this appeal, which is limited to determining whether Keller should be able to present those challenges at the CDP hearing. The Commissioner argues that the Tax Court's decision in *Our Country Home* establishes by collateral estoppel that Keller's participation in the Plan is a listed transaction and that the penalty therefore cannot ultimately be rescinded. But that issue is not before us. The collateral estoppel argument seems more appropriate for the CDP hearing or the Tax Court.

For the reasons stated, this case is not moot.

## B. *Keller's Liability Challenges*

Keller argues that ¶ (c)(2)(B) should not preclude liability challenges in a CDP hearing or the Tax Court when the taxpayer's prior opportunity to dispute its liability arose, as it did here, in an administrative setting.[9] Keller contends that ¶ (c)(2)(B)'s interpretive regulation, Treas. Reg. § 301.6330-1, which specifies that a conference with the Appeals Office is a prior opportunity under ¶ (c)(2)(B), is an unreasonable interpretation of ¶ (c)(2)(B).[10] We disagree. The Tax Court properly held Keller was precluded from challenging its liability at the CDP hearing under ¶ (c)(2)(B).

### 1. **Standard of Review**

"We review tax court decisions 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *Katz v. Comm'r*, 335 F.3d 1121, 1125-26 (10th Cir. 2003) (quoting *Kurzet v. Comm'r*, 222 F.3d 830, 833 (10th Cir. 2000); 26 U.S.C. § 7482(a)(1)). Thus, like our review of a district court's grant of summary judgment, we review the Tax Court's grant of summary

---

[9] Because the Tax Court's decision was based on ¶ (c)(2)(B) and we conclude Keller was precluded from raising its liability challenges at the CDP hearing under that paragraph, we need not reach whether Keller was similarly precluded from doing so under ¶ (c)(4)(A).

[10] Keller also proposes a new interpretation of ¶ (c)(2)(B): unless the taxpayer received a notice of deficiency, or a functional equivalent, the taxpayer may challenge the merits of the underlying liability in a CDP case. Because we conclude Treas. Reg. § 301.6330-1 reasonably interprets ¶ (c)(2)(B), we reject Keller's proposed, alternative interpretation.

judgment de novo. *Scanlon White, Inc. v. Comm'r*, 472 F.3d 1173, 1174 (10th Cir. 2006).

## 2. **Additional Legal Background**

This section outlines the legal framework for analyzing treasury regulations, highlights the relevant portions of ¶ (c)(2)(B) and Treas. Reg. § 301.6330-1, and summarizes the Tax Court's analysis of Treas. Reg. § 301.6330-1 in *Lewis v. Commissioner.*

### a. Chevron *deference*

We defer to an agency's regulation that reasonably interprets an ambiguous statute. *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 841-44 (1984). "[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844; *see also Hydro Res., Inc. v. EPA*, 608 F.3d 1131, 1145-46 (10th Cir. 2010) (en banc) ("[C]ourts afford considerable deference to agencies interpreting ambiguities in statutes that Congress has delegated to their care, including statutory ambiguities affecting the agency's jurisdiction." (citations omitted)).

This deference applies to Treasury regulations. *See Mayo Found. for Med. Educ. & Research v. United States,* 562 U.S. 44, 55 (2011) (clarifying that *Chevron* applies "with full force in the tax context"). Here, the Secretary promulgated Treas. Reg. § 301.6330-1 pursuant to express general authority under 26 U.S.C. § 7805(a) after notice and comment. *Id.* § 7805(a) ("Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as

may be necessary by reason of any alteration of law in relation to internal revenue.").

It follows that Treas. Reg. § 301.6330-1 is entitled to *Chevron* deference unless it is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Mayo Found.*, 562 U.S. at 53 (quotations omitted).

The *Chevron*-deference analysis proceeds in two steps. *Zen Magnets, LLC v. Consumer Prod. Safety Comm'n*, 841 F.3d 1141, 1160 (10th Cir. 2016). First, "[w]hen Congress has spoken to the precise question at issue, we must give effect to the express intent of Congress." *Id.* (citations and quotations omitted). Second, "[i]f the statute is silent or ambiguous, however, we defer to the agency's interpretation, if it is a permissible one." *Id.* (quotations omitted); *see also Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1056-57 (10th Cir. 2015).

In the first step, we employ the "traditional tools of statutory construction" to determine whether the intent of Congress is clear from the statutory text and "whether the [statutory] language . . . has a plain and unambiguous meaning with regard to the particular dispute." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987); *Chevron*, 467 U.S. at 842-43; *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The "plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341. If the statute is not ambiguous, our inquiry ends there. *Id.* at 340. But if the statute is "capable of being understood by reasonably well-informed persons in two or more different

senses," we proceed to the second step of *Chevron*. *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006) (quotations omitted).

In the second step, if the statute is silent or ambiguous on the specific issue, we defer to the agency's interpretation if it is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 842-43; *Sierra Club*, 787 F.3d at 1057. For a construction to be permissible, we need not conclude it was the only one the agency could reasonably have adopted or that we would have rendered the same interpretation if the question arose initially in a judicial context. *Chevron*, 467 U.S. at 843 n.11. We look only to whether the implementing agency's construction is reasonable. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

b. *Paragraph (c)(2)(B)*

The Tax Court relied on ¶ (c)(2)(B) to determine that Keller was precluded from challenging its liability at the CDP hearing. As outlined above, ¶ (c)(2)(B) precludes a taxpayer from challenging the existence or amount of the underlying tax liability at a CDP hearing if the taxpayer had a prior "opportunity to dispute" that liability—i.e., the taxpayer received a statutory notice of deficiency or otherwise had an "opportunity to dispute" the underlying tax liability. When ¶ (c)(2)(B) precludes a taxpayer from challenging its liability at the CDP hearing, the Tax Court accordingly lacks authority to review the liability determination because that issue was not properly before the CDP hearing. *Goza,* 114 T.C. at 182-83.

- 28 -

c. *Treas. Reg. § 301.6330-1*

In Treas. Reg. § 301.6330-1, the IRS explained that ¶ (c)(2)(B)'s reference to "opportunity to dispute" "includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." This clarification was promulgated in response to public comment about the proposed regulation. Miscellaneous Changes to Collection Due Process Procedures Relating to Notice and Opportunity for Hearing Prior to Levy, 71 Fed. Reg. 60827-02, 60830 (Oct. 17, 2006) (to be codified at 26 C.F.R. pt. 301) ("For liabilities not subject to deficiency procedures, the offer of an Appeals conference prior to assessment constitutes an opportunity to dispute the liability under section 6330(c)(2)(B)."). The IRS rejected the suggestion to limit this restriction to prior judicial proceedings:

> According to the comments, the only opportunity to dispute the tax liability that is sufficient to prevent the taxpayer from challenging the liability in a CDP hearing is the prior opportunity to dispute the liability in a judicial forum. *The IRS and the Treasury Department believe that the existing regulations correctly include an opportunity for an Appeals conference as a preclusive prior opportunity.* The text of section 6330(c)(2)(B) does not contain language limiting prior opportunities to judicial proceedings. Moreover, it is consistent for a taxpayer who has had an opportunity to obtain a determination of liability by Appeals in one administrative hearing to be precluded from obtaining an Appeals determination in a subsequent CDP administrative hearing with respect to the same liability. This interpretation of section 6330(c)(2)(B) has been upheld by the courts. *See, e.g., Pelliccio v. United States*, 253 F. Supp. 2d 258, 261-62 (D. Conn. 2003). Accordingly, the final regulations do not adopt this suggestion.

*Id.* (emphasis added).

d. *Tax court interpretation*

The Tax Court applied *Chevron* deference to Treas. Reg. § 301.6330-1 in *Lewis v. Commissioner* and held the regulation was a reasonable interpretation of ¶ (c)(2)(B).  In *Lewis*, like here, the Tax Court affirmed summary judgment for the Commissioner because the taxpayer had a prior opportunity to dispute his underlying tax liability in a conference with the Appeals Office.  128 T.C. at 62.

Applying the first step of *Chevron*, the Tax Court held that ¶ (c)(2)(B)'s "otherwise have an opportunity to dispute" language is ambiguous.  *See id.* at 55.  It noted that neither the 1998 IRS Restructuring and Reform Act nor the Code defined the phrase.  *Id.*  Moreover, the court said that the phrase could fairly be read to suggest different possible meanings, each finding support in the context of the statute:  (1) it could include only judicial review or (2) it could also include challenges before the Appeals Office.  *Id.* at 55-56.

Moving to *Chevron* step two, the Tax Court examined the possible meanings of the statute outlined above and concluded that Treas. Reg. § 301.6330-1's interpretation of ¶ (c)(2)(B) was reasonable.  *Id.* at 61.  Addressing the contrary view that ¶ (c)(2)(B) could be read to include only judicial review, the Tax Court said:

> As we see it, if Congress had intended to preclude only those taxpayers who previously enjoyed the opportunity for judicial review of the underlying liability from raising the underlying liability again in a collection review proceeding, the statute would have been drafted to clearly so provide.  The fact that Congress chose not to use such explicit language leads us to believe that Congress also intended to preclude taxpayers who were previously afforded a conference with the Appeals Office from raising the underlying liabilities again in a collection review hearing and before this Court.

*Id.*

The Tax Court also offered several rationales to justify including administrative proceedings in the definition of prior "opportunities" that would bar a subsequent challenge of the underlying tax liability at a CDP hearing and thus found Treas. Reg. § 301.6330-1 to be a reasonable interpretation of ¶ (c)(2)(B).[11]

3. **Analysis**

The Tenth Circuit has not addressed whether ¶ (c)(2)(B) precludes a challenge to liability at a CDP hearing when the taxpayer's prior opportunity to dispute liability occurred at an administrative, non-judicial proceeding.[12]

a. *Applying* Chevron

Applying the two-step *Chevron* test, we conclude, as the Tax Court did in *Lewis*, that ¶ (c)(2)(B)'s reference to a prior "opportunity to dispute" is ambiguous

---

[11] The Eighth Circuit and Tax Court have similarly precluded liability challenges at CDP hearings under ¶ (c)(2)(B) when the taxpayer had a prior opportunity to dispute its liability before the Appeals Office. *See, e.g.*, *Hassell Family Chiropractic, DC, PC v. Comm'r*, 368 F. App'x 695, 696 (8th Cir. 2010) (unpublished) (barring taxpayer from challenging liability before Tax Court under ¶ (c)(2)(B) where it had a prior conference with an IRS Appeals Officer); *Bishay v. Comm'r*, T.C. Memo. 2015-105, at *6 (2015) (holding that a taxpayer had an "opportunity" to dispute his liability when he received a Letter 1153 and had a subsequent conference with the Office of Appeals, "precluding [the taxpayer] from re-raising that argument at his CDP hearing" under ¶ (c)(2)(B)).

[12] In *Shaffer v. Comm'r*, 55 F. App'x 532, 535 (10th Cir. 2003) (unpublished), we applied ¶ (c)(2)(B) and barred reconsideration of the taxpayer's liability when it had previously raised the issue of liability in a Tax Court proceeding. We made no comment in *Shaffer* about the statute's application to a prior administrative opportunity to dispute liability.

and that Treas. Reg. § 301.6330-1 is a reasonable interpretation of ¶ (c)(2)(B). We therefore affirm the Tax Court's grant of summary judgment.

i.    Step one

In step one of the *Chevron* analysis, we determine whether the statute is ambiguous. Here, ¶ (c)(2)(B) is ambiguous on its face and when analyzed within the context of § 6330.

Keller and the Commissioner agree that the language of ¶ (c)(2)(B) does not define which prior "opportunities" to dispute tax liability Congress intended to include. The Tax Court in *Lewis* found that ¶ (c)(2)(B) was subject to competing interpretations. 128 T.C. at 55. Looking at the language of ¶ (c)(2)(B), we agree that what constitutes an "opportunity to dispute" is subject to more than one reasonable interpretation: it may refer only to judicial review, only to administrative review, or both.

Paragraph (c)(2)(B)'s surrounding text contributes to this ambiguity. Paragraph (c)(4)(A) expressly precludes consideration of issues at a CDP hearing that were raised and considered at any other "*administrative* or *judicial* proceeding" (emphasis added). In contrast, ¶ (c)(2)(B) refers to prior "opportunity to dispute" but is silent on what type of opportunity the phrase includes.

Paragraph (c)(2)(B)'s text is thus ambiguous. Neither the surrounding text of § 6330 nor the rest of the Code define what Congress intended by "otherwise have an opportunity to dispute." *Accord Lewis*, 128 T.C. at 55.

- 32 -

ii.  Step two

In step two of the *Chevron* analysis, we determine whether the agency's

interpretation is based on a permissible construction of the statute.  Here, we

conclude that Treas. Reg. § 301.6330-1(e)(3)'s explanation that a prior ¶ (c)(2)(B)

"opportunity to dispute" includes "a prior opportunity for a conference with Appeals

that was offered either before or after the assessment of the liability" is a reasonable

interpretation of ¶ (c)(2)(B).

First, focusing on the text, ¶ (c)(2)(B) states:

> The person may also raise at the hearing challenges to the existence or amount
> of the underlying tax liability for any tax period if the person did not receive
> any statutory notice of deficiency for such tax liability or did not otherwise
> have an opportunity to dispute such tax liability.

The word "hearing" refers to the CDP hearing.  Because the tax liability in this

case is a penalty and not a deficiency, the key language is "did not otherwise have an

opportunity to dispute such tax liability."  Nothing on the face of this text excludes

an administrative proceeding from an "opportunity to dispute" a tax penalty.  And

nothing suggests that reading "opportunity to dispute" to include an administrative

proceeding is unreasonable.  The text of the statute therefore supports the

reasonableness of Treas. Reg. § 301.6330-1(e)(3)'s interpretation of ¶ (c)(2)(B).

Second, considering the key language in the statute's broader context,

¶ (c)(4)(A) bars taxpayers from raising an issue at a CDP hearing that was raised and

considered in a judicial or administrative forum.  It is reasonable to conclude that

- 33 -

Congress regarded an administrative hearing as adequate to preclude CDP hearing consideration under ¶ (c)(2)(B) as well.[13]

Third, we find the Tax Court's reasoning in *Lewis* persuasive. There, the court said it would be "possible to interpret 'otherwise have an opportunity to dispute' to refer to those situations where a taxpayer was afforded one of the other, nondeficiency, avenues for prepayment judicial review." 128 T.C. at 56. But, after pointing out several problems with this interpretation, the court concluded it was "unlikely that this was Congress's intent." *Id.* at 61.

For example, the Tax Court observed that if Congress had intended to limit ¶ (c)(2)(B) to prior judicial review, it could simply have said "opportunity to seek judicial review." *Id.* at 57. Moreover, the judicial-only interpretation Keller proposes would "encourage a taxpayer to wait until a collection action begins before disputing [a nondeficiency] liability" to obtain judicial, rather than administrative, review of liability. *Id.* at 58. But this would minimize the role of the Appeals Office and contradict the purpose of the 1998 IRS Restructuring and Reform Act. Congress intended to provide the taxpayer a means to seek review of a liability through an informal conference with the Appeals Office, *id*. at 59—"a meaningful process, short of litigation, in which [the taxpayer] could resolve tax disputes," *id.* at 60; *see also Giamelli v. Comm'r*, 129 T.C. 107, 114 (2007).

_____

[13] *See Bankers Life and Cas. Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998) ("In the second step [of *Chevron*], the court determines whether the regulation harmonizes with the language, origins, and purpose of the statute.").

We agree with these points and the Tax Court's conclusion that "it is reasonable" to read ¶ (c)(2)(B) "to conclude that Congress intended not only to address those taxpayers who were previously provided an opportunity to litigate their liability, but also those provided an opportunity to dispute the liability short of litigation."  128 T.C. at 60.  Thus, under ¶ (c)(2)(B),  "[a] conference with the Appeals Office provides a taxpayer a meaningful opportunity to dispute an underlying tax liability."  *Id.* at 61.  It follows that the regulation interpreting ¶ (c)(2)(B) in this manner is a reasonable construction of the statute.

b. *Keller's arguments*

Keller argues Treas. Reg. § 301.6330-1 is an unreasonable interpretation of ¶ (c)(2)(B) because it (1) impermissibly limits the jurisdiction of the Tax Court and the federal courts; and (2) is internally inconsistent.  These arguments do not persuade us that the regulation is unreasonable or "arbitrary, capricious, or manifestly contrary to the statute," *Chevron*, 467 U.S. at 844.

i.   Limiting jurisdiction

Keller argues that Treas. Reg. § 301.6330-1 impermissibly limits the jurisdiction of the Tax Court through a regulation and thus should not receive *Chevron* deference.  We disagree.

Treas. Reg. § 301.6330-1 does not diminish the jurisdiction of any court.  Section 6330(d) establishes the Tax Court's jurisdiction to review CDP proceedings.  Treas. Reg. § 301.6330-1 limits only the scope of what may be heard at the agency's

- 35 -

administrative CDP proceedings.[14]  Although the Tax Court has jurisdiction only to hear matters that were properly before the CDP hearing, *see Goza*, 114 T.C. at 182-83, Treas. Reg. § 301.6330-1 does not address the Tax Court.  It addresses matters that may be raised before an administrative CDP hearing.

Moreover, Treas. Reg. § 301.6330-1 has no impact on the taxpayer's ability to file a refund suit in federal district court.  The jurisdiction of federal courts remains available for a taxpayer to contest its liability.

  ii. Inconsistencies

Keller argues that Treas. Reg. § 301.6330-1 contains internal inconsistencies and is thus unreasonable.  We disagree.

First, Keller contends Treas. Reg. § 301.6330-1 is inconsistent because it precludes liability challenges at a CDP hearing even when the taxpayer failed to exercise its opportunity to dispute liability at the Appeals Office and was therefore not actually heard.  But this is not an inconsistency.  As explained previously, the statute and the regulation refer only to an "opportunity," not to an opportunity that was exercised.  *See Chandler*, 327 F. App'x at 766 (holding taxpayer was properly precluded from challenging liability at a CDP hearing when it had a prior opportunity to dispute liability and did not exercise it).  Not only is the regulation internally consistent, it comports with the purpose of encouraging taxpayers to use the Appeals Office process.

---

[14] We agree with the IRS's Office of Chief Counsel, who explained:  "This preclusive effect does not define the scope of the reviewing court's jurisdiction but defines only when a taxpayer can challenge his or her liability." *Collection Due Process Cases*, Office of Chief Counsel Notice, CC-2003-016, Internal Revenue Service at 16 (May 29, 2003).

Second, Keller argues Treas. Reg. § 301.6330-1 is inconsistent because it precludes liability challenges at a CDP hearing for some, but not all, prior administrative opportunities. For example, Keller notes that Treas. Reg. § 301.6330-1's explanation of a prior "opportunity" does not include liability challenges previously heard at a conference with the Examination Division of the IRS or by the Appeals Office in a pre-assessment hearing for a liability subject to deficiency procedures. But again, Keller fails to show an internal inconsistency. Nothing in the regulation mentions conferences with the Examination Division or is inconsistent with allowing challenges at the CDP hearing for liabilities subject to deficiency procedures. Moreover, Keller fails to show that drawing distinctions among different administrative processes is unreasonable or arbitrary or that it is inconsistent to treat different administrative proceedings differently. *See Mayo Found.*, 562 U.S. at 59 ("Regulation, like legislation, often requires drawing lines."). In particular, Keller has not shown that the prior Appeals Office opportunity addressed in Treas. Reg. § 301.6330-1 is similar to or serves similar purposes as the other administrative proceedings Keller cites as falling outside the regulation.

In short, Keller's internal inconsistency arguments fall short of showing that Treas. Reg. § 301.6330-1 is arbitrary, capricious, or manifestly contrary to the statute.

## III. **CONCLUSION**

For the foregoing reasons, we affirm the Tax Court's grant of summary judgment.[15]

---

[15] Keller and the Commissioner have each filed an unopposed motion requesting judicial notice of certain materials. Keller's motion tenders a document regarding calculation of its penalty. Because we do not, and need not, reach this issue, we deny Keller's motion. The Commissioner's motion provides a supplemental appendix containing documents from Tax Court decisions relevant to Keller's appeal and comporting with Fed. R. Evid. 201(b)(2). *See Estate of McMorris v. Comm'r*, 243 F.3d 1254, 1259 n.8 (10th Cir. 2001). Accordingly, we grant the Commissioner's motion.