# United States Tax Court

166 T.C. No. 2

THE DIVERSIFIED GROUP INCORPORATED,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

JAMES HABER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 17038-18L, 17535-18L.          Filed February 23, 2026.

————

Between 1999 and 2002, Ps marketed and sold certain tax avoidance strategies to clients without reporting those strategies as required by I.R.C. § 6111.

R assessed penalties under I.R.C. § 6707 with respect to Ps. In correspondence with Ps, R offered Ps a meeting with IRS Appeals to dispute their liabilities for the assessed penalties.

To circumvent the application of I.R.C. § 6330(c)(2)(B) and associated regulations, which prohibit taxpayers that have had an "opportunity to dispute" their underlying tax liability from challenging that liability in a collection due process (CDP) proceeding, Ps refused to meet with IRS Appeals.

R took actions to collect the penalties, and Ps requested CDP hearings. At their respective CDP

hearings, Ps argued that they were entitled to challenge their liabilities for the assessed penalties.

R issued Notices of Determination to Ps, determining that Ps were precluded from challenging their penalty liabilities. Ps sought review in this Court.

In a Motion for Partial Summary Judgment R addresses four issues: (1) whether Ps were precluded from challenging their penalty liabilities during their respective CDP hearings; (2) whether the settlement officer who conducted their CDP hearings was properly appointed under the Appointments Clause of the Constitution; (3) whether a postexamination hearing with IRS Appeals would have violated Ps' Fifth Amendment due process rights; and (4) whether the penalties assessed with respect to Ps violated the Excessive Fines Clause of the Eighth Amendment.

*Held*: R's offer to Ps of a conference with IRS Appeals was an opportunity for Ps to dispute their penalty liabilities within the meaning of I.R.C. § 6330(c)(2)(B).

*Held, further*, because of that prior opportunity, Ps were precluded under I.R.C. § 6330(c)(2)(B) from challenging their liabilities in their CDP hearings and are precluded from doing the same in this Court. *Lewis v. Commissioner*, 128 T.C. 48, 62 (2007), followed.

*Held, further*, *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), does not require a different result.

*Held, further*, the settlement officer who conducted Ps' CDP hearings was properly appointed.

*Held, further*, Ps have not clearly raised a Fifth Amendment due process challenge to any hypothetical conference with IRS Appeals, and a ruling on that issue is unnecessary.

*Held, further*, Ps' Eighth Amendment arguments concern their underlying liability for the assessed penalties and, because Ps are precluded from challenging their

penalty liabilities, Ps cannot challenge the penalties on Eighth Amendment grounds.

*Held, further*, R's Motion will be granted in part.

_____

*Jasper G. Taylor III* and *Harriet A. Wessel*, for petitioners.

*Brooke N. Stan, Sheila R. Pattison, Christina D. Sullivan, Robert P. Brown*, and *Aaron E. Cook*, for respondent.

OPINION

TORO, *Judge*:  This collection due process (CDP) case involves petitioners James Haber and the Diversified Group, Inc. (Diversified), Mr. Haber's corporation.  Over the years, Mr. Haber has featured in numerous cases before our Court as the architect and implementer of various tax strategies.  As relevant here, Mr. Haber and Diversified arranged such strategies between 1999 and 2002.  The strategies included transactions that were, as Mr. Haber and Diversified describe them, "designed to result in noneconomic tax losses for clients and others."  Pet'r's Resp. 13.  Mr. Haber and Diversified did not register these transactions as tax shelters with the Internal Revenue Service (IRS).

In March 2002, the Commissioner of Internal Revenue informed Mr. Haber that the IRS was investigating Diversified's "tax shelter activities."  In March 2014, the Commissioner assessed penalties under section 6707[1] with respect to Mr. Haber and Diversified.  Typically, taxpayers in this position are offered a pre- or post-assessment conference with the IRS Office of Appeals (IRS Appeals) to dispute the penalties.[2]  Regulations under sections 6320 and 6330 and numerous

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals.  *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

cases have concluded that such conferences are "opportunit[ies] to dispute [the taxpayer's underlying] tax liability" within the meaning of section 6330(c)(2)(B). Treas. Reg. §§ 301.6320-1(e)(3), Q&A-E2, 301.6330-1(e)(3), Q&A-E2; *see also, e.g., Lewis v. Commissioner*, 128 T.C. 48, 62 (2007). Generally, therefore, taxpayers offered such conferences are precluded from challenging the existence or the amounts of their penalty liabilities at subsequent CDP hearings. *See* I.R.C. § 6330(c)(2)(B) (providing that challenges are permitted only if the taxpayer has *not* had a prior opportunity to challenge the underlying liability); *Lewis*, 128 T.C. at 62 (concluding that an IRS Appeals conference qualifies as a prior opportunity). As a further consequence, these taxpayers are also precluded from raising such challenges in CDP cases before our Court. *Lewis*, 128 T.C. at 62.

In an attempt to avoid this result, Mr. Haber and Diversified (through their counsel) refused to discuss the section 6707 penalties with IRS Appeals both during and after the IRS examination of their activities. Only after the IRS tried to collect the penalties, issuing collection notices to Mr. Haber and Diversified, did Mr. Haber and Diversified request a CDP hearing with IRS Appeals. At the hearing, Mr. Haber and Diversified argued that, because they had preemptively and consistently declined prior conferences with IRS Appeals, they had not had a prior opportunity to dispute their underlying liabilities. Thus, they argued, they were entitled to challenge their underlying liabilities at the CDP hearing.

In Notices of Determination issued to Mr. Haber on August 7, 2018, and to Diversified on July 31, 2018, IRS Appeals disagreed, determining that Mr. Haber and Diversified were precluded by section 6330(c)(2)(B) from challenging their underlying liabilities. Mr. Haber and Diversified then sought review in this Court, raising numerous objections to the Notices of Determination.

Now before us is the Commissioner's Motion for Partial Summary Judgment. The Commissioner has moved for summary judgment on four issues: (1) that Mr. Haber and Diversified were precluded from challenging their section 6707 penalty liabilities during their respective CDP hearings; (2) that the settlement officer who conducted their CDP hearings was not required to be appointed under the Appointments Clause of the U.S. Constitution; (3) that a postexamination hearing with IRS Appeals would not have violated Mr. Haber's and Diversified's due process rights under the Fifth Amendment to the U.S. Constitution; and (4) that the section 6707 penalties assessed with respect to Mr. Haber

and Diversified did not violate the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution. As discussed below, we will grant the Commissioner's Motion with respect to issues 1 and 2. We decline to rule on issue 3, as the Commissioner presents a hypothetical challenge that Mr. Haber and Diversified do not advance. And we will deny the Motion as moot with respect to issue 4, as our resolution of issue 1 means we cannot review a substantive challenge to the underlying liabilities.

*Background*

We derive the following background from the Stipulations of Facts with accompanying Exhibits, which are incorporated by reference, and from the Motion papers. The background is set forth solely to rule on the Motion and not as findings of fact for these cases. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). When the Petitions in these cases were filed, Mr. Haber resided in New York and Diversified had its principal place of business in New York.

I.    *Mr. Haber and Diversified*

Mr. Haber founded Diversified and served as its president. During the years 1999 through 2002, Mr. Haber and Diversified marketed and sold certain tax avoidance strategies to clients.[3] The strategies they developed included transactions that, in their own words, were "designed to result in noneconomic tax losses for clients and others." Pet'r's Resp. 13. Mr. Haber and Diversified did not register the transactions as tax shelters pursuant to section 6111.

II.    *Examination and Pre-Assessment Letters*

On or about March 14, 2002, the IRS sent to Mr. Haber a letter notifying him that it was examining Diversified's "tax shelter activities." Decl. of Jasper Taylor III, Ex. E. Specifically, the letter stated that the IRS examination would occur "pursuant to I.R.C. sections 6707 and 6708," which set out penalties related to reportable transactions. *Id.*

The IRS examination continued for more than 11 years. On May 9, 2013, the IRS sent counsel for Mr. Haber and Diversified Forms 5701, Notice of Proposed Adjustment (NOPA), dated May 8, 2013. The

---

[3] Over the years, tax strategies designed and implemented by Mr. Haber and Diversified have featured in more than a dozen cases before our Court.

NOPAs asserted that, between 1999 and 2002, Mr. Haber and Diversified had organized and sold to clients more than 190 transactions substantially similar to "Son-of-BOSS" tax shelter transactions described in I.R.S. Notice 2000-44, 2000-2 C.B. 255. The NOPAs proposed penalties of approximately $41.2 million under section 6707 for failing to register the transactions. Mr. Haber and Diversified were to be jointly liable for the penalties. The IRS attached to the NOPAs Forms 886–A, Explanation of Items, which set out the rationale behind the proposed penalties in greater detail.

Mr. Haber and Diversified disputed the proposed penalties with the IRS Examination team throughout the summer of 2013. On August 29, 2013, stating that "IRS Appeals consideration is not a meaningful option and might arguably foreclose any judicial review," they (through their counsel) sent a letter to Acting Team Manager Stephanie P. McMahon purporting to "waive all IRS Appeals rights [Mr. Haber and Diversified] may have in connection with NOPAs relating to the proposed section 6707 penalties, including any right to receive a so-called 30-day letter, other than rights to a [CDP] hearing." Decl. of Jasper Taylor III, Ex. W, at 1. That same day, Mr. Haber and Diversified wrote to Ms. McMahon to request that their matter be referred to the IRS's Associate Chief Counsel for technical advice, a request that ultimately was denied.

So began a months-long struggle over IRS Appeals' consideration of Mr. Haber and Diversified's cases. Mr. Haber and Diversified repeatedly disavowed any right to meet with IRS Appeals. Internally, IRS staff sought to provide a pre-CDP right to IRS Appeals consideration of the section 6707 penalties.

On December 16, 2013, the IRS sent Mr. Haber and Diversified letters notifying them of penalties of $24,920,904 under section 6707.[4] Based on the standard Letter CP–215, these letters had been modified to provide unequivocal language about IRS Appeals. In relevant part, they read:

> If you do not agree to the IRC § 6707 penalties, you can
> request a post-assessment conference with the IRS Appeals

---

[4] The letters attached revised NOPAs with recomputed penalties of approximately $42.1 million. The difference between the amounts reflected in the revised NOPAs and the amounts reflected in the letters was attributable to payments of approximately $17.2 million made by co-promoters of the transactions, as the IRS explained in a letter dated January 16, 2014.

> Office. To do so, forward a written protest in duplicate before the designated response date, and mail it to the revenue agent indicated above.

Ex. 8-J, at 1; Ex. 9-J, at 1. The letters included revised NOPAs and Forms 886–A.

On February 11, 2014, the IRS notified Mr. Haber and Diversified of the section 6707 penalties once more by letter. The letter stated, with respect to IRS Appeals: "If you believe you have reasonable cause why this penalty should not be imposed, or if you otherwise believe you are not liable for this penalty, you may request consideration by our Appeals Office." Ex. 30-P, at 3, 6.

The IRS assessed Diversified's penalty on March 3, 2014. It assessed Mr. Haber's penalty on March 10, 2014.

III.    *2014 Refund Action*

On or about February 28, 2014, Mr. Haber and Diversified each paid what they thought were divisible portions of their penalties and filed refund claims with the IRS.[5] *Diversified Grp., Inc. v. United States*, 123 Fed. Cl. 442, 446 (2015), *aff'd*, 841 F.3d 975 (2016). On July 18, 2014, they filed suit in the U.S. Court of Federal Claims, seeking refunds of the amounts they had paid. *Id.*

The Court of Federal Claims dismissed Mr. Haber and Diversified's action for lack of subject matter jurisdiction in September 2015. *Id.* at 457. The court held that the penalty was not divisible, with the result that Mr. Haber and Diversified had not fully paid their liability, a prerequisite for a refund suit. *Id.* at 456–57. Mr. Haber and Diversified appealed, and on November 10, 2016, the U.S. Court of Appeals for the Federal Circuit affirmed the decision of the Court of Federal Claims. *Diversified Grp., Inc.*, 841 F.3d at 985. Petitioners' motions for rehearing and rehearing en banc were denied on January 18, 2017.

---

[5] Mr. Haber and Diversified assumed (erroneously) that the letters issued to them on February 11, 2014, meant that the penalties had been assessed. Thus, they paid the amount and filed refund claims before the actual assessments.

IV.    *Collection Actions and CDP Hearings*

A.    *2014 Notices*

On May 6, 2014, the IRS mailed Mr. Haber and Diversified Notices of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. Mr. Haber and Diversified sent back Forms 12153, Request for a Collection Due Process or Equivalent Hearing, on June 2, 2014. The matters were assigned together to IRS Appeals Settlement Officer Eric Feinman, who indicated some uncertainty regarding the application of section 6330(c)(2)(B).

Because the Court of Federal Claims suit was still pending, the 2014 CDP hearings were suspended. On April 27, 2017, after that litigation had concluded, Settlement Officer Feinman indicated in an internal email that he would reactivate the 2014 CDP requests.

B.    *2017 Notices*

On April 26, 2017, the IRS sent to Mr. Haber and Diversified letters that resembled the February 11, 2014, penalty notices. About a week later, the IRS sent Mr. Haber and Diversified Notices of Intent to Levy and Notice of Your Right to a Hearing, dated May 3, 2017. In addition to the penalties assessed in 2014 and interest, each of the Notices reflected an "Additional Penalty" of approximately $5.4 million.

C.    *Collection Due Process Hearing*

Settlement Officer Feinman sent a letter on May 3, 2017, informing Mr. Haber and Diversified that one CDP hearing would cover the 2014 Notices of Federal Tax Lien Filing and the 2017 Notices of Intent to Levy. That letter also stated that the "Additional Penalty" reflected in the 2017 Notices was the result of an administrative error, had not been assessed, and was "moot."

Over the ensuing 14 months, Mr. Haber and Diversified, Settlement Officer Feinman, and other IRS staff members traded emails, letters, and memoranda regarding whether Mr. Haber and Diversified were entitled to dispute their penalty liabilities in the CDP hearing and whether the liens and levies at issue should be sustained. On July 31 and August 7, 2018, Settlement Officer Feinman issued Notices of Determination to Diversified and Mr. Haber, respectively. The Notices of Determination sustained the Notices of Federal Tax Lien Filing and proposed levy actions and determined that Mr. Haber and

Diversified were barred from challenging their underlying liabilities by section 6330(c)(2)(B).

V.    *Tax Court Proceedings*

Mr. Haber and Diversified timely petitioned this Court, and their cases were consolidated.

In time, the Commissioner filed his Motion for Partial Summary Judgment. To allow the parties to engage in fact discovery, we held the Motion in abeyance. Once discovery was complete, Mr. Haber and Diversified filed a Response and the Commissioner filed his Reply. Shortly thereafter, the Supreme Court decided *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). We permitted the parties to file additional papers discussing the effect of *Loper Bright* on the issues now before us.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party.[6] *Sundstrand Corp.*, 98 T.C. at 520.

---

[6] Mr. Haber and Diversified emphasize the standard for summary judgment, calling it "drastic" and a "high hurdle." They further argue, on the basis of statements in *Sundstrand*, 98 T.C. at 520, that the Commissioner must show that "no reasonable doubt exists as to the facts at issue . . . with all factual inferences drawn and all ambiguities resolved in Petitioners' favor." Pet'r's Resp. 48. The Commissioner disagrees, arguing that Mr. Haber and Diversified misconstrue the standard. We need not resolve this dispute because it does not make a difference here. Specifically, we are not granting the Motion with respect to issues 3 and 4, and, under either party's formulation of the summary judgment standard, we would find that the Commissioner has met his burden with respect to issues 1 and 2.

II.    *Preclusion of Challenges to the Underlying Penalty Liabilities*

   A.    *Collection Due Process Generally*

Pursuant to section 6321, the Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for federal tax upon demand for payment and failure to pay. *See Iannone v. Commissioner*, 122 T.C. 287, 293 (2004). The lien arises when the tax is assessed. *See* I.R.C. §§ 6322, 6671(a).

The Code also authorizes the IRS to levy on (i.e., to seize) property or property rights of any person who is liable for any tax and has failed to pay that tax after proper notice and demand. I.R.C. §§ 6331, 7701(a)(11)(B), (12)(A)(i); *see also Ramey v. Commissioner*, 156 T.C. 1, 2–3 (2021). Because the power to levy is a strong remedy for collecting unpaid tax, section 6330 gives taxpayers the right to a hearing with IRS Appeals, i.e., a CDP hearing. I.R.C. § 6330(b)(1); *Ramey*, 156 T.C. at 2.

At the CDP hearing, IRS Appeals must verify that the requirements of any applicable law or administrative procedure have been met. I.R.C. § 6330(c)(1). Additionally, IRS Appeals generally must consider "any relevant issue" raised by the taxpayer. I.R.C. § 6330(c)(2)(A), (3)(B). This includes, subject to the requirements of section 6330(c)(2)(B) and (4), "challenges to the existence or amount of the underlying tax liability for any tax period." I.R.C. § 6330(c)(2)(B).

   B.    *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The framework for that review is set out in our caselaw.

When the validity of the underlying tax liability is properly at issue in a collection review proceeding, the Court will review the matter de novo. *Giamelli v. Commissioner*, 129 T.C. 107, 111 (2007); *Davis v. Commissioner*, 115 T.C. 35, 39 (2000). When the underlying liability is not properly before us, we review the determination for abuse of discretion. *Byers v. Commissioner*, 740 F.3d 668, 675 (D.C. Cir. 2014) (citing *Tucker v. Commissioner*, 676 F.3d 1129, 1135–37 (D.C. Cir. 2012), *aff'g* 135 T.C. 114 (2010), *and* T.C. Memo. 2011-67), *aff'g* T.C. Memo. 2012-27; *Giamelli*, 129 T.C. at 111; *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). That is, we do not substitute our own judgment for that of IRS Appeals and do not

decide de novo whether we would have reached the same determination as IRS Appeals. Rather, we decide whether IRS Appeals' determination was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

The parties agree, consistent with our approach in prior cases, that whether Mr. Haber's and Diversified's underlying liabilities are properly at issue is also a matter that the Court reviews de novo. *See, e.g.*, *Barnhill v. Commissioner*, 155 T.C. 1 (2020) (analyzing the application of section 6330(c)(2)(B) without according deference to the determination by IRS Appeals); *Lewis*, 128 T.C. 48 (same). We follow this approach here, but note that the result would be the same under either standard of review.

C.      *Structure of Section 6330(c)(2)(B)*

Section 6330(c)(2)(B) provides specific conditions under which a taxpayer can raise challenges to the liability that the government seeks to collect by lien or levy:

> The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

The conditions set out by section 6330(c)(2)(B) are necessary, not merely sufficient, for a taxpayer to raise challenges to their underlying liability. *See Lewis*, 128 T.C. at 55; *Davis*, 115 T.C. at 39; *Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 182. A taxpayer who has received a Notice of Deficiency, for example, may not challenge the underlying liability. The same is true for a taxpayer who has otherwise had a prior opportunity to dispute the underlying liability.

The conditions also operate independently: courts of appeals and this Court have held that a taxpayer is precluded from challenging the underlying liability if either condition is present. *See Patrick's Payroll Servs., Inc. v. Commissioner*, 848 F. App'x 181, 183–84 (6th Cir. 2021), *aff'g* T.C. Memo. 2020-47; *Streiffert v. Commissioner*, T.C. Memo. 2014-62, at *12, *15–16; *Oyer v. Commissioner*, T.C. Memo. 2003-178, at *5, *aff'd*, 97 F. App'x 68 (8th Cir. 2004). These decisions square with the provision's text, which asks whether a taxpayer has "otherwise" had an opportunity to dispute the liability. "Otherwise" can mean "[u]nder

other circumstances." *Otherwise*, *The American Heritage Dictionary of the English Language* (5th ed. 2018) (definition 2). In circumstances to which a Notice of Deficiency is applicable, therefore, section 6330(c)(2)(B) requires that a taxpayer not have received a Notice of Deficiency; under nondeficiency circumstances, it requires that a taxpayer not have had an "opportunity to dispute such tax liability."

### D. *IRS Appeals Consideration as an "Opportunity to Dispute"*

The Secretary has promulgated a regulation stating that a chance to confer with IRS Appeals regarding one's liability is an "opportunity to dispute" such liability within the meaning of section 6330(c)(2)(B). Treas. Reg. § 301.6330-1(e)(3), Q&A-E2. Specifically, the regulation provides that "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."[7] *Id.*

Our Court upheld the regulation in 2007. *Lewis*, 128 T.C. at 61. Since then, multiple courts of appeals have either adopted the reasoning from *Lewis* or concurred with its determination regarding the regulation on other grounds. *E.g.*, *Our Country Home Enters. v. Commissioner*, 855 F.3d 773, 790 (7th Cir. 2017); *Keller Tank Servs. II, Inc. v. Commissioner*, 854 F.3d 1178, 1200 (10th Cir. 2017); *Iames v. Commissioner*, 850 F.3d 160, 166 (4th Cir. 2017).

Our decision in *Lewis*, 128 T.C. at 50 n.2, expressly left open "whether simply an offer of a conference with Appeals is sufficient to preclude subsequent collection review consideration." Nevertheless, we have since determined, on multiple occasions, that a taxpayer who has declined an offer to meet with IRS Appeals is barred from challenging the underlying liability in a CDP hearing. *See Goddard v. Commissioner*, T.C. Memo. 2022-96, at *22–24 (holding that a taxpayer subject to section 6707 penalties had a prior opportunity to dispute its liabilities because it had been offered IRS Appeals consideration in a NOPA and Notice and Demand, even though the taxpayer had not filed a protest or met with IRS Appeals); *Bletsas v. Commissioner*, T.C. Memo. 2018-128, at *9 ("Because [the taxpayer] had, but neglected to avail herself of, a prior opportunity to challenge her TFRP liability before the IRS Appeals Office, she was precluded from disputing that liability at the CDP hearing."), *aff'd*, 784 F. App'x 835 (2d Cir. 2019); *Thompson v.*

---

[7] A parallel regulation under section 6320 includes the same rule. Treas. Reg. § 301.6320-1(e)(3), Q&A-E2.

*Commissioner*, T.C. Memo. 2012-87, 2012 WL 998311, at \*3 (holding that a taxpayer subject to a Trust Fund Recovery Penalty had an opportunity to dispute his liability when he received a Letter 1153, even though the taxpayer did not subsequently submit a protest); *see also Pough v. Commissioner*, 135 T.C. 344, 349 (2010).

The courts of appeals have read the statute the same way. *See, e.g., Our Country Home Enters., Inc. v. Commissioner*, 855 F.3d at 788 ("Our Country Home suggests . . . that a taxpayer simply could decline an invitation to challenge his tax liability in an administrative hearing and thus preserve the issue for review in a later CDP hearing. But that's not the case. Section 6330(c)(2)(B) speaks to *opportunities* to dispute liability, not opportunities that a taxpayer actually exercised. [*Keller Tank Servs. II, Inc. v. Commissioner*, 854 F.3d at 1188–89.] Thus, a taxpayer need not pursue that opportunity to be barred from raising a liability challenge in a CDP hearing."); *Keller Tank Servs. II, Inc. v. Commissioner*, 854 F.3d at 1188 ("Notably, the taxpayer need only have received an opportunity to dispute its tax liability. Whether it took advantage of that opportunity is irrelevant. Thus, a taxpayer is precluded from challenging liability at a CDP hearing when the taxpayer was afforded, but failed to take advantage of, a prior opportunity to dispute the liability.").

E.     *Application to Mr. Haber and Diversified*

In light of the prior decisions interpreting section 6330(c)(2)(B) just discussed, Mr. Haber and Diversified "otherwise had an opportunity to dispute" their section 6707 penalty liabilities when they received the December 16, 2013, and February 11, 2014, letters from the IRS. Each letter authorized Mr. Haber and Diversified to request consideration of their penalty liabilities by IRS Appeals. This Court has held that such authorization presents an "opportunity to dispute." *See Goddard*, T.C. Memo. 2022-96, at \*22–24; *Bletsas*, T.C. Memo. 2018-128, at \*9; *Thompson v. Commissioner*, 2012 WL 998311, at \*3. There is no relevant distinction between Mr. Haber's and Diversified's circumstances and those in past cases.

Consider our decision in *Bletsas*, T.C. Memo. 2018-128. There, the IRS proposed to assess a Trust Fund Recovery Penalty under section 6672 with respect to the taxpayer. In a Letter 1153, Trust Funds Recovery Penalty Letter, the IRS notified the taxpayer of the proposed assessment and stated: "You \* \* \* have the right to appeal or protest this action. To preserve your appeal rights you need to mail us

your written appeal within 60 days from the date of this letter . . . ." *Bletsas*, T.C. Memo. 2018-128, at *3. Because "[t]he Letter 1153 informed [the taxpayer] of her appeal rights and provided clear instructions about how to appeal," we held that the taxpayer, having taken no action in response to the letter, was precluded from disputing her penalty liability. *Id.* at *8–9. The U.S. Court of Appeals for the Second Circuit affirmed:

> Bletsas concedes . . . that she did not respond to the IRS' notice of proposed liability for the 2014 and 2015 taxes, which was sent to her by certified mail in 2015. Bletsas was, therefore, precluded from challenging her trust fund recovery penalty liability at the subsequent collection-due-process hearing.

*Bletsas v. Commissioner*, 784 F. App'x at 836 (footnote omitted).

Like the Letter 1153 in *Bletsas*, the December 16, 2013, and February 11, 2014, letters in these cases informed Mr. Haber and Diversified of their appeal rights. They each also provided instructions about how to appeal—namely, by filing a protest. Had Mr. Haber or Diversified followed the letters' instructions, they could have challenged their liabilities before IRS Appeals. That is the essence of an "opportunity to dispute" within the meaning of section 6330(c)(2)(B).

### F. *Mr. Haber and Diversified's Unavailing Counterarguments*

Mr. Haber and Diversified respond to the Commissioner's Motion with a diverse array of arguments. None of them disturbs our conclusion.

#### 1. *Meaningfulness of the Opportunity*

Mr. Haber and Diversified assert that an "opportunity to dispute" under section 6330(c)(2)(B) must be "meaningful" and that the opportunity presented by the letters they received was not meaningful. Or, at a minimum, they say, there is a material question of fact as to whether any conference in which they would have participated would have been meaningful.

We have previously held that a notice of a proposed section 6707 penalty can provide a "meaningful opportunity" to dispute assessment of the penalty. *Goddard*, T.C. Memo. 2022-96, at *21–23. In *Goddard*, the Commissioner proposed to assess section 6707 penalties with respect

to a law firm and one of its partners. The Commissioner notified the law firm and the partner, in a package containing Form 5701, that "[i]f you do not agree to the IRC § 6707 penalties, you can request a post-assessment conference with the IRS Appeals Office. To do so, forward a written protest in duplicate before the designated response date . . . ." *Goddard*, T.C. Memo. 2022-96, at *7. The partner filed a protest and conferred with Appeals, but the law firm did not. This Court held that

> [the law firm], like [the partner], had a prior opportunity to dispute its liabilities for the pre-AJCA section 6707 penalties when it received the NOPA letter package and notice and demand letter. Consequently, [the law firm] was precluded from disputing the liabilities at the CDP hearing and is likewise precluded from doing so before this Court.

*Id.* at *23.

Mr. Haber and Diversified maintain that any conference they would have attended would have produced a "precooked result," rendering their opportunity to contest the penalties meaningless. Among other things, Mr. Haber and Diversified say (1) that they were told that, as of 2014, IRS Appeals had sustained IRS Examination's determinations regarding section 6707 penalties 100% of the time, (2) that such sustentions were based on "secret law" developed by the IRS, (3) that section 6707 penalties were an Appeals coordinated issue, and (4) that the Examination function and IRS Appeals were collaborating with each other to guarantee unfavorable outcomes for taxpayers. Mr. Haber and Diversified point to the IRS Examination team's rejection of their attempt to waive IRS Appeals rights, along with its refusal to seek technical guidance and its "doctoring" of the letters sent to Mr. Haber and Diversified, as further evidence for their position. In Mr. Haber's and Diversified's views, the IRS Examination team was afraid that its interpretation of section 6707 would not be sustained if reviewed by a court or the IRS's National Office. Therefore, Mr. Haber and Diversified assert, the team schemed to ensure that such review would never occur.

We are skeptical of Mr. Haber's and Diversified's characterization as to what transpired. But even setting our skepticism aside in view of the posture of the cases (before us on the Commissioner's Motion for Partial Summary Judgment), their argument faces a more fundamental problem. Specifically, Mr. Haber and Diversified were offered, but did

not avail themselves of, an opportunity to contest their liabilities for the section 6707 penalties. That being the case, they may not now demand a trial on how meaningful the declined opportunity would or would not have been. A number of other courts, including the U.S. Court of Appeals for the Second Circuit, to which an appeal in these cases would normally lie, *see* I.R.C. § 7482(b), have reasoned similarly, *see, e.g.*, *Dotson v. Griesa*, 398 F.3d 156, 161 n.2 (2d Cir. 2005) ("Although a plaintiff is generally not required to exhaust administrative remedies before bringing a § 1983 suit, . . . this rule does not apply to procedural due process challenges if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate."); *Aronson v. Hall*, 707 F.2d 693, 694 (2d Cir. 1983) ("Having chosen not to pursue available administrative review, [the plaintiff] is hardly in a position to claim that such review denied him due process."); *see also, e.g.*, *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 694–95 (7th Cir. 2004) ("We have frequently held that terminated employees who do not avail themselves of pre-termination hearings waive their right to contest the adequacy of such hearings.").

In fact, by declining to participate in a conference with IRS Appeals, Mr. Haber and Diversified have made it impossible for us to undertake the very analysis they request. As Mr. Haber and Diversified say in their Response: "[W]hether an Appeals conference is 'meaningful' depends on what happens at the conference." Pet'r's Resp. 52. Precisely so. But (because Mr. Haber and Diversified preemptively declined to attend) no IRS Appeals conference took place before the CDP hearing in these cases. As a result, we are unable to decide how meaningful any such conference would have been. *See, e.g.*, *Tooly v. Schwaller*, 919 F.3d 165, 175 (2d Cir. 2019) ("Because Tooly never appeared for the interrogation meeting, we cannot say with certainty what would have occurred at the meeting, or whether the meeting would or would not have been fair."); *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) ("[The plaintiff's] failure to submit to the grievance procedures precludes consideration of the fairness of those proceedings in practice.").

A different path was available to Mr. Haber and Diversified. Nothing prevented them from attending a conference with IRS Appeals, allowing a record to develop, and *then* arguing that the process was deficient (assuming, of course, that they still took that view). Instead, we are left to guess at what might have happened at a hypothetical conference on the basis of the conversations that Mr. Haber and

Diversified had with the IRS Examination team. Considering the record here, such speculation does not create a dispute of material fact.

In short, Mr. Haber and Diversified may not prevent a record from developing by declining a conference and then demand a trial about what might have happened at the conference that did not take place. We will never know how the conference would have played out because Mr. Haber and Diversified did not see the process through. None of the circumstances Mr. Haber and Diversified cite overcome this incontrovertible fact.[8]

2. *Whether the Letters Offered a "Conference with Appeals"*

Next, Mr. Haber and Diversified make various semantic arguments, essentially asserting that the offers of "a post-assessment conference" and "consideration by Appeals" in the December 16, 2013, and February 11, 2014, letters, respectively, were not offers of a "conference with Appeals" within the meaning of Treasury Regulation § 301.6330-1(e)(3), Q&A-E2. Specifically, Mr. Haber and Diversified encourage us to embrace a definition of "conference" that requires "a formal meeting, between an Appeals officer and a taxpayer, formally scheduled, with a submission of information." Pet'r's Resp. 84–85. Among other arguments, they assert that, if Mr. Haber and Diversified were offered anything, it was an opportunity to *request* a conference and not the conference itself.

These arguments border on frivolous.[9] This Court has held that conferences with IRS Appeals are "informal." *Estate of Sblendorio v. Commissioner*, T.C. Memo. 2007-94, 2007 WL 1191255, at *3. "[A] face-to-face hearing is not a prerequisite for Appeals consideration." *Id.* And

---

[8] Some courts of appeals relieve litigants of their obligation to participate in available administrative proceedings in certain extreme circumstances. *See, e.g.*, *Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 479 (7th Cir. 2014) (suggesting that being subject to a court order that precludes meaningful participation in a hearing could justify forgoing the hearing); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("[A] plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are *unavailable or patently inadequate*." (Emphasis added.)). These cases do not present such circumstances.

[9] So too does Mr. Haber's and Diversified's argument that forced, unwelcome conferences cannot be "opportunities" under section 6330(c)(2)(B) because opportunities are inherently desirable. This is simply untrue, as anyone who has had the opportunity to sit for a bar examination can attest.

correspondence and telephone conversations can be sufficient to constitute a conference with IRS Appeals. *Id.* Simply put, a conference with IRS Appeals need not be a "formal meeting."

More importantly, even if we assume the regulation's reference to a conference with IRS Appeals requires a formal meeting, Mr. Haber and Diversified have made no effort to demonstrate that they would not have received such a meeting had they followed the instructions provided in the December 16, 2013, and February 11, 2014, letters. Indeed, the December 16, 2013, letter clearly offers a "conference with Appeals." As we have just discussed, having declined an actual meeting, Mr. Haber and Diversified cannot invoke the imagined characteristics of a hypothetical meeting to avoid summary judgment.

### 3. *The* Chenery *Doctrine*

Mr. Haber and Diversified also argue that, on account of the doctrine in *SEC v. Chenery Corp.* (*Chenery*), 332 U.S. 194, 196 (1947), we cannot consider the content of the December 16, 2013, letter to determine whether they had an "opportunity to dispute" their penalty liabilities before their CDP hearings. They reason that, because Settlement Officer Feinman did not mention the letter in the Notices of Determination he issued to Mr. Haber and Diversified, the Court likewise may not consider it.

First, even assuming that Mr. Haber and Diversified were correct in this regard, we would find that the February 11, 2014, letter alone constituted a prior opportunity to dispute the section 6707 penalties. At the time the letter was issued, the IRS Examination team and counsel for Mr. Haber and Diversified had already corresponded at length about whether Mr. Haber and Diversified would be entitled to review by IRS Appeals. Mr. Haber and Diversified sought to avoid the opportunity, while the IRS Examination team sought to provide it. The February 11, 2014, letter offered "consideration by . . . Appeals" should Mr. Haber and Diversified desire it. This was an opportunity to dispute the underlying liability before IRS Appeals and everyone involved knew it. The complaints Mr. Haber and Diversified raise now about the specificity of the letter are not persuasive.

Second, we are puzzled by Mr. Haber's and Diversified's reliance on *Chenery* when they have asserted that our review of this issue should be de novo. *Chenery* applies when a court reviews agency action deferentially. *See Chenery*, 332 U.S. at 196 ("[A] reviewing court, in

dealing with a determination or judgment *which an administrative agency alone is authorized to make*, must judge the propriety of such action solely by the grounds invoked by the agency." (Emphasis added.)). "[It] says nothing about circumstances in which Congress has authorized a court to make its own determinations . . . ." *Ax v. Commissioner*, 146 T.C. 153, 159–60 (2016).[10] And courts make their own determinations in de novo proceedings. *See id.*; *see also Doe v. Chao*, 540 U.S. 614, 619 (2004) (characterizing the de novo standard "as distinct from any form of deferential review"); *Estate of Streightoff v. Commissioner*, 954 F.3d 713, 720 (5th Cir. 2020) (holding, in the deficiency context, that *Chenery* is not implicated "because the [T]ax [C]ourt is redetermining the tax deficiency notice de novo"), *aff'g* T.C. Memo. 2018-178; *Louis v. DOL*, 419 F.3d 970, 977 (9th Cir. 2005) (declining to apply *Chenery* when Congress has instructed courts to review an action de novo). Therefore, if Mr. Haber and Diversified are correct regarding the de novo standard of review (a point on which the parties agree and which we have no reason to question), the *Chenery* argument fails.

4.      *Administrative Procedure Act and Timeliness of the Letters*

In two sections of their Response, Mr. Haber and Diversified contend that the February 11, 2014, letters cannot have conferred an "opportunity to dispute" the section 6707 penalties because they were created in violation of the Administrative Procedure Act or were untimely under section 6303.[11]

The mailing of a notice proposing the assessment of a penalty is not agency action susceptible to review under the Administrative Procedure Act. The Act provides, in relevant part, that "final agency action for which there is no other adequate remedy in a court" is subject to judicial review. 5 U.S.C. § 704. Agency action is defined, by statute, as "the whole or a part of an agency rule, order, license, sanction, relief,

---

[10] In *Ax*, 146 T.C. at 159–60, we held that our determination in deficiency proceedings need not be made by reviewing only the reasons set out by the Commissioner in a Notice of Deficiency. Because this Court makes its own determination as to liability in deficiency proceedings, rather than simply redetermining adjustments in the Notice of Deficiency, we can consider newly pleaded issues and arguments.

[11] On this point, we note that, even if Mr. Haber and Diversified were correct in their view, the December 16, 2013, letter would have provided a prior opportunity for consideration by IRS Appeals.

or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *see also* 5 U.S.C. § 701(b)(2) (referring to 5 U.S.C. § 551 for the definition of "agency action"). The February 11, 2014, letters to Mr. Haber and Diversified reflect proposed reasoning and potential future action, not "final action" taken by the Commissioner. *Cf. Comput. Scis. Corp. v. Commissioner*, No. 4823-21, 165 T.C., slip op. at 15–19 (Oct. 6, 2025) (discussing the Administrative Procedure Act standard). Thus, the Administrative Procedure Act is inapplicable to the letters.

Section 6303(a) instructs the Secretary to give notice "as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203" to each person liable for said tax. Mr. Haber and Diversified claim that, because the February 11, 2014, letter was sent before assessment, it was untimely under section 6303 and thus could not have provided an "opportunity to dispute" their liabilities with Appeals.

Whether the letters were timely under section 6303(a) is irrelevant to their effect under section 6330(c)(2)(B). Timely or untimely, the letters provided an avenue for Mr. Haber and Diversified to contest their liabilities with IRS Appeals. And Mr. Haber and Diversified have offered no authority to suggest that the consequence for untimeliness under section 6303 is that, despite the text of the letters, they could not have met with Appeals. To the contrary, Treasury Regulation § 301.6330-1(e)(3), Q&A-E2, provides that "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals *that was offered either before or after the assessment of the liability*." (Emphasis added.)

### 5. *The Appointments Clause*

Mr. Haber and Diversified speculate that, even if they had taken the Commissioner up on his offer for them to meet with IRS Appeals, their hypothetical conference would not have constituted an "opportunity to dispute" their liabilities because the officer with whom they would have met would have been improperly appointed under Article II of the U.S. Constitution. Acknowledging our prior decision to the contrary in *Tucker*, 135 T.C. 114, which was affirmed by the U.S. Court of Appeals for the D.C. Circuit, *Tucker v. Commissioner*, 676 F.3d 1129, Mr. Haber and Diversified make two primary arguments. First, they maintain that an IRS Appeals officer's role in the context of a hearing to review an assessable penalty is sufficiently different from the officer's role in the CDP context, which warrants a different outcome.

Second, they contend that the Commissioner ignores the standards set out in *Lucia v. SEC*, 585 U.S. 237 (2018), a Supreme Court case on this topic.

In view of the authorities we discuss above, we question whether Mr. Haber and Diversified may challenge the appointments of hypothetical IRS Appeals officers before whom they never appeared. *See, e.g.*, *Aronson*, 707 F.2d at 694. But, in any case, this Court recently addressed similar claims in *Tooke v. Commissioner*, 164 T.C. 16 (2025). In *Tooke*, we applied *Lucia* and again held that IRS Appeals officers are not "Officers of the United States" within the meaning of the Appointments Clause. For the same reasons set out in *Tooke* and *Tucker*, even if we were to consider the merits of the claim, we would conclude once more that IRS Appeals officers are not "Officers of the United States." This is as true when IRS Appeals officers preside over hearings on assessable penalties as it is when they preside over CDP hearings. Accordingly, Mr. Haber's and Diversified's imagined officers' appointments would not have invalidated their hypothetical conference with IRS Appeals.

### 6. *Regulation Validity and* Loper Bright

From the outset, Mr. Haber and Diversified have argued that Treasury Regulation § 301.6330-1(e)(3), Q&A-E2, is invalid, maintaining that *Lewis* and other cases upholding the regulation were wrongly decided. Following the Supreme Court's decision in *Loper Bright*, they add that the result in those cases has effectively been overturned and that we must consider the regulation afresh. We disagree.

*Loper Bright*, 144 S. Ct. at 2273, states:

> By [overruling *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)], . . . we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology.

Thus, the holdings in *Lewis*, our own prior cases, and the related decisions by the courts of appeals remain in force. *See also, e.g.*, *Garcia Pinach v. Bondi*, 147 F.4th 117, 121, 131–33 (2d Cir. 2025) (analyzing

*Loper Bright* and the doctrine of statutory stare decisis and leaving undisturbed the holding of a prior panel opinion).

Moreover, *Lewis* and the related cases strongly suggest that the courts viewed Treasury Regulation § 301.6330-1(e)(3), Q&A-E2, as the best reading of section 6330(c)(2)(B) (rather than simply a permissible one), and thus that the Commissioner would have prevailed regardless of *Chevron*. In *Lewis*, 128 T.C. at 60–61, for example, we said that "[u]ltimately, while it is possible to interpret section 6330(c)(2)(B) to mean that every taxpayer is entitled to one opportunity for a precollection judicial review of an underlying liability, we find it unlikely that this was Congress's intent."

Even more pointedly, without relying on *Chevron*, the U.S. Court of Appeals for the Fourth Circuit held in *Iames v. Commissioner*, 850 F.3d at 164:

> Considering the text and structure of Section 6330(c)(2)(B) as well as the purpose of the CDP provisions more generally, we conclude that [IRS Appeals] hearings activate Section 6330's prohibition. The fact that the IRS, through its regulation, interprets Section 6330(c)(2)(B) as we do reinforces our conviction that preassessment hearings before the Office of Appeals qualify as "opportunit[ies] to dispute" tax liability.

The U.S. Court of Appeals for the Seventh Circuit made a similar observation in *Our Country Home Enterprises, Inc. v. Commissioner*, 855 F.3d at 790–91, while applying the *Chevron* framework: "Fortunately here, the government not only has reasonably interpreted an ambiguous statute but also has offered the most compelling interpretation— certainly more compelling than Our Country Home's interpretation." *See also Keller Tank Servs. II, Inc. v. Commissioner*, 854 F.3d at 1199 (explaining that the U.S. Court of Appeals for the Tenth Circuit found our reasoning in *Lewis* persuasive, including the point regarding congressional intent). We are unpersuaded by Mr. Haber's and Diversified's assertions that such statements by us and the courts of appeals are simply dicta, and we see no reason to abandon the views expressed in those opinions.

* * *

To summarize, although Mr. Haber and Diversified may not have desired an opportunity to dispute their penalty liabilities before

proceeding to a CDP hearing, the letters the IRS sent to them on December 16, 2013, and February 11, 2014, clearly offered them a chance to meet with IRS Appeals and contest their liabilities. The text of section 6330(c)(2)(B) and our decisions interpreting it establish that letters such as those received by Mr. Haber and Diversified count as opportunities to dispute their liabilities. Thus, Mr. Haber and Diversified were precluded from challenging their liabilities in their CDP hearings and are precluded from doing the same in this Court.

III. *The Status of Settlement Officer Feinman*

The Commissioner also asks for summary judgment that "the settlement officer of the IRS Independent Office of Appeals who conducted the CDP hearing was not required to be appointed under the Appointments Clause of the Constitution." Resp't's Mot. 1. In light of our precedents, the Commissioner is entitled to summary judgment on this issue.[12] *See Tooke*, 164 T.C. 16; *Tucker*, 135 T.C. 114.

IV. *Constitutional Challenges Under the Fifth and Eighth Amendments*

The Commissioner also moves for summary judgment as to whether a postexamination hearing with IRS Appeals would violate Diversified's and Haber's Fifth Amendment due process rights, and whether the section 6707 penalty violates the Excessive Fines Clause of the Eighth Amendment. We will deny the Commissioner's Motion with respect to these issues.

The Fifth Amendment issue is best understood as a subissue of the section 6330(c)(2)(B) dispute resolved above. It is not clear, however, that Mr. Haber and Diversified are pressing a Fifth Amendment challenge here. Pet'r's Resp. 10 ("Petitioners do not address Issues (b) and (c) as framed by Respondent, but instead preserve certain of those arguments as stated *infra*."). For this reason and because the hypothetical due process question is not otherwise necessary to the resolution of these cases, we decline to answer it.

The Eighth Amendment issue goes to Mr. Haber's and Diversified's underlying liability for the section 6707 penalties. Their

---

[12] Mr. Haber and Diversified recognize that our precedent resolves this issue in the Commissioner's favor and state simply that they wish to preserve their opposing argument for appeal. They state the same with respect to several other issues. We do not address these issues further.

claim is not that collection of the penalties by lien or levy independently violates the Eighth Amendment, but that the underlying liabilities do. Because we determined above that Mr. Haber and Diversified are precluded from disputing their underlying liabilities before this Court, we will deny the Commissioner's Motion as it relates to this issue as moot.

V.    *Conclusion*

For the reasons discussed above, we conclude that Mr. Haber and Diversified were precluded by section 6330(c)(2)(B) from challenging their section 6707 penalty liabilities in their respective CDP hearings and will grant the Commissioner's Motion with respect to that issue. Further, we conclude that Mr. Haber's and Diversified's CDP hearings were not void on account of the Appointments Clause and will grant the Commissioner's Motion with respect to that issue. Finally, we will deny the Commissioner's requests for summary judgment with respect to constitutional issues under the Fifth and Eighth Amendments.

To reflect the foregoing,

*An appropriate order will be issued.*